**Miguel A. HERNANDEZ et al.,
Plaintiffs,**

**v.**

**The MOTOR VESSEL SKYWARD et al.,
Defendants.**

**Civ. No. 73–1185–CA.**

United States District Court,
S. D. Florida.

Nov. 21, 1973.

Friedman & Lipcon, Miami, Fla., for plaintiffs.

Fowler, White, Humkey, Burnett, Hurley & Banick, Miami, Fla., for defendants.

ATKINS, District Judge.

This cause has come before the Court on a motion by plaintiffs to certify this case as a class action pursuant to F.R. Civ.P. 23(b)(1)(A) and (B) and/or 23(b)(3) and Local Rule 19 subd. A(3). A brief recitation of the circumstances giving rise to this motion will elucidate the vexatious issue before the Court. On June 23, 1973 the Motor Vessel "Skyward" departed from the Port of Miami with 655 passengers aboard on what was to be a seven day pleasure cruise. The trip turned into a nightmare for many of those aboard, however. Most of the passengers and crew were taken seriously ill allegedly because of their exposure to contaminated food or water on the ship. The illness generally manifested itself by severe vomiting and diarrhea. The crippled ship returned to Miami on June 30, 1973.

On July 11, 1973 the plaintiffs Miguel A. Hernandez, Beatriz Hernandez, Leopold Del Calvo, Beatriz Del Calvo, Christina Del Calvo and Ariel Hernandez filed suit in admiralty against the above-styled defendants. The plaintiffs as prospective representatives of a class comprised of all passengers taken ill during the voyage assert four causes of action in support of their claim—breach of contract, negligence in exposing the passengers to contaminated food or water, breach of implied warranty of fitness of the food and water and negligence in providing inadequate medical

care.[1]  Plaintiffs seek over three million dollars in compensatory and punitive damages on behalf of the class.

Upon receipt of the motion by plaintiffs to certify the cause as a class action, the Court instructed the Clerk of the Court to issue a notice to all prospective claimants. That notice, annexed hereto as Exhibit A, informed the passengers that the defendants were prohibited from communicating with any passenger regarding prospective or actual claims. This action was taken by the Court to preserve the efficacy of the proposed class action by preventing unauthorized communications which inadvertently or otherwise would misrepresent the status, purpose and effects of the action or would solicit the opting out of various class members. *See* Manual for Complex Litigation. Rule 1.41 (1973).

The defendants raise numerous objections to the maintenance of the case as a class action. Initially, the defendants assert that considerations of improper claims solicitation and other potential abuses of the class action technique mandate denial of certification in a mass tort or mass disaster situation.[2] Because the Court is aware of the potential for abuse that exists whenever a class action arises, it stands ever vigilant over the progress of such an action to ensure that such abuses are minimized. The procedures outlined by the Judicial Panel on Multidistrict Litigation aid demonstrably in preventing any misuse of the class action technique.

The defendants also focus upon the administrative burdens that would befall this Court and plaintiffs' counsel if the motion to proceed as a class action were granted. The plaintiffs rightfully point out, however, that the Court has numerous alternatives available under Rule 23 by which it can facilitate an expeditious resolution of the lawsuit. Moreover, in light of the approach taken by the Court on the class action issue in this cause, no major administrative or procedural difficulties are foreseen.

The thrust of the defendants' objection to the motion for certification lies in principle. The defendants contend that a mass tort or mass accident case is unsuitable for class action treatment. Since the filing of this lawsuit, the defendants have received approximately 350 inquiries relative to redress of claims. They proffer to the Court that, but for the imposition of the class action petition, most of the claims would have been amicably settled.[3]

In passing upon the defendants' objections, the Court must be guided by the purposes underlying the class action technique. To be viable a class action must offer economy of effort and uniformity of result without imposing undue debilitation of procedural or substantive safeguards for members of the class or for persons opposing the class. Avoidance of multiplicity of suits, and prevention of inconsistent or varying adjudications are benchmarks of a valid class action.

1. Plaintiffs originally set forth the doctrine of unseaworthiness as a fifth cause of action. This claim was stricken, however, by Order of the Court on September 13, 1973.

2. The defendants affirmatively refrain from ascribing any improper motives or actions to counsel for the plaintiffs. Indeed, the Court endorses defendants' appraisal of the work of plaintiffs' counsel who has approached his clients' cause with the utmost diligence and industry. Defendants' attack focuses on the precedential implications inherent in any ruling by the Court.

3. In support of the defendants' good faith intentions in this regard, the Court notes that immediately after this suit was filed, the defendants filed a motion for leave to consummate settlement with approximately 100 passengers who contacted the cruise line regarding their claims. This motion was in effect denied by the Notice to Claimants (Exhibit A).

Not surprisingly, in-depth research by counsel and the Court has failed to uncover a great amount of case law on the invocation of Rule 23 in mass disaster litigation.[4] Undoubtedly, the very nature of a personal injury action with its concomitant private implications militates against the desirability of counsel calling Rule 23 into play.[5] In two such cases, however, the rule has been utilized. Petition of Gabel, 350 F.Supp. 624 (C.D.Cal.1972) and American Trading and Production Corp. v. Fishbach and Moore, Inc., 47 F.R.D. 155 (N.D.Ill. 1969). In the former, Judge Peirson M. Hall applied the rule in an airline disaster in which 50 persons died. In the latter, a class action was declared on behalf of 120 exhibitors at a convention who suffered property loss as a result of a fire which was attributed to the negligence of the defendants.

At first glance, the approach taken by the district courts in the above-mentioned cases appears to conflict with the Advisory Committee's comments on the applicability of Rule 23 to a mass tort. The Committee stated:

A "mass accident" resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses to liability, would be present, affecting the individuals in different ways. In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried. Advisory Committee's Note to Proposed Rule of Civil Procedure 23, 39 F.R.D. 69, 103.

Upon closer scrutiny, however, it is apparent that the approach taken by Judges Hall and Decker and urged by the commentators [6] is consistent with the intent of the draftsmen of Rule 23. A class action determination that would encompass the issues of negligence, proximate cause and damages would rarely be adequate in a mass tort. If the application of the technique is limited to those issues in which uniformity of result is certain, however, the rule retains its viability, even in a mass accident setting.[7] That is, issues such as proximate cause and negligence must be subject to a clear cut determination before a class action can be maintained on those issues. Such a clear-cut determination could be made in the *Gabel* and *American Trading and Production Corp.* cases.

---

4. The Court has found only four cases which deal with the applicability of the revised Rule 23 to a mass tort situation: Petition of Gabel, 350 F.Supp. 624 (C.D.Cal.1972); Daye v. Commonwealth of Pennsylvania, 344 F.Supp. 1337 (E.D.Pa.1972); Hobbs v. Northeast Airlines, Inc., 50 F.R.D. 76 (E. D.Pa.1970); American Trading and Production Corp. v. Fishbach and Moore, Inc., 47 F.R.D. 155 (N.D.Ill.1969). A hybrid of the mass tort situation under consideration in the case *sub judice* has received greater treatment by the courts. In civil rights suits pursuant to 42 U.S.C. § 1983, prisoners have sought to invoke the class action rule with varying success. *See, e. g.,* Worley v. Bounds, 355 F.Supp. 115 (W.D.N.C. 1973); Ray v. Rockefeller, 352 F.Supp. 750 (N.D.N.Y.1973); Wright v. McMann, 321 F.Supp. 127 (N.D.N.Y.1970), cert. denied, 409 U.S. 885, 93 S.Ct. 115, 34 L.Ed.2d 141.

5. *See generally,* 7A Wright and Miller, Federal Practice and Procedure, § 1783 (1972 ed.).

6. *See,* 3B. J. Moore, Federal Practice § 23.-45(3) at 811 n. 35 (2d ed. 1969); 7A Wright and Miller Federal Practice and Procedure § 1783 (1972 ed.).

7. In securities fraud cases, a class action is properly maintainable if some uniform misrepresentations are found. *See* Green v. Wolf Corporation, 406 F.2d 291 (2d Cir. 1968). Proof of individual reliance and damages in those cases are subject to severance and treatment in subsequent proceedings. *See e. g.,* Vernon J. Rockler and Co. v. Graphic Enterprises, Inc. 52 F.R.D. 335 (D.Minn.1971); Fogel v. Wolfgang, 47 F.R. D. 213 (S.D.N.Y.1969).

In the instant case, only one issue is available for class treatment. Whether the defendants were negligent in preparing either the drinking water or food that was available for consumption by the passengers is subject to a uniform determination. A ruling on this issue would be applicable to any prospective claimant. The issues of the proximate cause of each passenger's illness, contract liability, the adequacy of medical treatment afforded each passenger, and damages are individual in nature. The likelihood of individual defenses on these issues is at least recognizable. For example, the symptoms manifested by some of the passengers may be related to seasickness or some other illness unrelated to exposure to contaminated food or water.

To determine whether the issue of negligence in the preparation of food and water may be resolved by class treatment the requirements of Rule 23 must be met. The four prerequisites to a class action are present in this case. First, there are 655 prospective claimants. Thus, the class is so numerous that joinder of all members is impracticable. Secondly, there are questions of law and fact common to the class, especially in reference to the issue of negligence discussed above. Thirdly, the claims of the plaintiffs as representative parties are typical of the claims of the class. Fourthly, it is clear from the record in this cause that the representative parties will fairly and adequately protect the interests of the class.

The Court also finds that the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the parties opposing the class.[8] It is conceivable that the defendants would be taken to task by one passenger after another until a judgment against the defendants was obtained. At that point, future plaintiffs could call the doctrine of collateral estoppel into play to bind the defendants on the issue of negligence in the preparation of food and water.[9]

8. The scope of an action maintainable under Rule 23(b)(1)(A) is unclear. One commentator suggests that the provision contemplates more than a risk that the party opposing the class might be liable to some members of the class and not liable to others. 7A Wright and Miller Federal Practice and Procedure § 1773 (1972). *But see*, Petition of Gabel, 350 F.Supp. 624 (C.D.Cal. 1972); Berman v. Narragansett Racing Ass'n, Inc., 48 F.R.D. 333, 337 (D.R.I. 1969). In light of the collateral estoppel effects that may ultimately attach to defendant's position, however, (See discussion below), the Court finds that the spirit of Rule (b)(1)(A) is fulfilled in that a class action will "provide a ready and fair means of achieving unitary adjudication." Advisory Committee Comments 39 F.R.D. 95, 100. Additionally, a (b)(1)(A) action is viable when a common fund exists that may be evaporated by an award to some of the prospective claimants. *See*, Berman v. Narragansett Racing Ass'n, Inc., *supra; See also*, F.R.Civ.P. 23(b)(1)(B). Under the limitation of liability provision in 46 U.S.C. § 183, such a common fund exists. Although it is unlikely that an aggregation of the claims of the passengers will exceed the value of the vessel "Skyward" the theoretical possibility exists.
The finding that a class action on the limited negligence issue is maintainable under (b)(1)(A) renders unnecessary a discussion of the appropriateness of the (b)(3) provisions in the instant cause. *See*, Berman v. Narragansett Racing Ass'n, Inc., *supra;* 3 B. J. Moore, Federal Practice, § 23.31 [3] (1969).

9. This conclusion is suggested by relatively recent decisions of the United States Supreme Court and the United States Court of Appeals for the Fifth Circuit which have to a great extent repudiated the doctrine of mutuality heretofore inherent in the principles of res judicata and collateral estoppel. *See*, Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); Rachal v. Hill, 435 F.2d 59 (5th Cir. 1970) cert. denied 403 U.S. 904, 91 S.Ct. 2203, 29

But prior to any determination adverse to the defendants, a strong possibility exists that a tremendous amount of needless judicial time and energy may be expended on this litigation. It appears to the Court that the interests of all concerned would be advanced by a single determination of the negligence issue under the provisions of F.R.Civ.P. 23(c)(4)(A).

Based upon the foregoing, it is

Ordered and adjudged that a class action be maintained under F.R.Civ.P. 23(b)(1)(A) and (c)(4)(A) on the issue of the negligence of the defendants in preparing or making available to the passengers aboard the M/V "Skyward" contaminated food and/or water. In view of the defendants' apparent willingness to settle with many of the claimants, and because the class action attaches to the negligence issue only, the Court will permit the defendants to reach amicable agreements with those who wish to so resolve their disputes.

---

L.Ed.2d 680; James Talcott, Inc. v. Allachabad Bank, Ltd., 444 F.2d 451 (5th Cir. 1971); Seguros Tepeyac, SA Compania Mexicana v. Jernigan, 410 F.2d 718 (5th Cir. 1969) cert. denied, 396 U.S. 905, 90 S. Ct. 219, 24 L.Ed.2d 181. *See also*, United States v. United Air Lines, 216 F.Supp. 709, 725–730 (E.D.Wash., Nev. 1962) aff'd as to res judicata sub nom. United Air Lines v. Wiener, 335 F.2d 379, 404–405 (9th Cir. 1964). Thus, resolution of the issue of negligence in the preparation of food and water in the instant case may well prove conclusive for the purpose of further adjudication under the "full, fair opportunity rule" of *Blonder-Tongue*.

It is worthwhile to note, however, that since the plaintiffs are not entitled to a jury trial in the instant cause which lies in Admiralty, the defendants may, in a different federal action based on diversity jurisdiction or in a state proceeding, overcome the application of the collateral estoppel rule in the event of an adverse judgment under the Rachal v. Hill rationale. In *Rachal*, the Fifth Circuit held that a finding in an injunction action brought by the Security and Exchange Commission that the defendants had violated securities laws did not, under the doctrine of collateral estoppel preclude relitigation of that issue in a civil action which was brought by parties who were strangers to the injunction action. Although the factual issues were identical, the Court determined that collateral estoppel was not appropriate in view of the fact that the defendants had a right to a jury trial in the civil action but did not have such a right in the injunction action.

UNITED STATES DISTRICT COURT
OFFICE OF THE CLERK
SOUTHERN DISTRICT OF FLORIDA

FILED

1973

AUG 01 1973 JOSEPH I. BOGART
CLERK, U. S. DIST. CT.
JOSEPH I. BOGART DIST. OF FLA.
CLERK 73-1185-Civ-CA
SOUTHERN DIST. OF FLA.

MIGUEL A. HERNANDEZ, BEATRIZ
HERNANDEZ, and the children of
BEATRIZ HERNANDEZ, to-wit
LEOPOLD DEL CALVO, BEATRIZ DEL
CALVO, CHRISTINA DEL CALVO, and
ARIEL HERNANDEZ, who sue by and
through their mother, natural
guardian, and next best friend,
BEATRIZ HERNANDEZ,

      Plaintiffs,

-vs-

The Motor Vessel "SKYWARD",
NORWEGIAN CARIBBEAN LINES,
and
LAURITZ KLOSTER,

      Defendants,

NOTICE TO CLAIMANTS

A lawsuit has been filed against the owners of the
M/V "Skyward" by a passenger who was aboard that vessel
during the cruise of June 23rd through June 29th, 1973.

The Court has been advised that you have contacted
Norwegian Caribbean Line regarding your claim for ill-
ness which you suffered during that voyage. Because of
certain legal procedures Norwegian Caribbean Line is pro-
hibited from communicating with you relative to your claim
until certain matters have been resolved by the Court.

Once the Court has ruled upon the legal issues be-
fore it, consideration will be given as to whether Nor-
wegian Caribbean Line may again contact you.

EXHIBIT A

## UNITED STATES DISTRICT COURT
### OFFICE OF THE CLERK
#### SOUTHERN DISTRICT OF FLORIDA

Page Two

In any event, you will promptly receive further information from the Court regarding your claim.

JOSEPH I. BOGART
Clerk of Court

By_____
                Deputy Clerk

---

### ORDER DENYING MOTION FOR ATTORNEYS' FEES

On January 16, 1974, this Court partially denied the plaintiffs' motion for attorneys' fees in this limited class action. That Order denied recovery of such fees from either the defendants or any class member who settled his claim prior to the trial in this cause. The Court reserved ruling on the propriety of awarding attorneys' fees with respect to (1) any members of the class who settled their claims after a successful prosecution of the class issue by the named plaintiffs; (2) any members of the class who might benefit in a subsequent trial from a favorable judgment on the class issue in the instant cause.

Since the January 16 Order, the following significant events have occurred. The defendants have admitted negligence in taking aboard the M/V "Skyward" contaminated water and/or food during the applicable period. The defendants have reserved, however, the right to contest the issue of causal relationship, or proximate cause, with respect to each claim. (Admission of liability filed January 21, 1974). Furthermore, the named plaintiffs have amicably resolved their claims with the defendants.

Upon consideration of the applicable case law and the arguments propounded by counsel and the Court being otherwise duly advised, it is ORDERED AND ADJUDGED as follows:

1. Plaintiffs' motion for discovery on the issue of attorneys' fees is denied.

2. Plaintiffs' motion for an award of attorneys' fees against those class members who either settle their claims henceforth or prosecute their claims and utilize the admission of negligence obtained in the instant cause is denied.

The Court concludes that the nexus between the plaintiffs' efforts to obtain an admission of negligence and the potential decision by a class member to

settle his claim is a tenuous one. The awarding of attorneys' fees on that basis alone would be inappropriate.

Undoubtedly, any claimant who proceeds to trial and utilizes the admission of negligence offered by the defendants in this case will benefit from the efforts of plaintiffs' counsel.[1] Under the circumstances of this case, however, that others may substantially benefit from the plaintiffs' efforts does not end the inquiry. First, enforcement of an allocation of attorneys' fees in cases brought in other forums is replete with difficulties. No common fund, in the strict sense, has been created. See, Sprague v. Ticonic Nat. Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); United States v. Equitable Trust Co. of N. Y., 283 U.S. 738, 51 S.Ct. 639, 75 L.Ed. 1379 (1931). Nor has a fund been preserved from which a damage recovery can lie. Furthermore, the assigning of a value of the services of plaintiffs' attorney in the context of each claim hereinafter tried would be a highly speculative task.

Secondly, the decision not to permit the assessment of attorneys' fees against other class members in this mass tort litigation has been reached only after a careful balancing of conflicting policy considerations. On the one hand, the Court should provide stimuli to the utilization of the class action technique in meritorious situations. On the other hand, the Court must avoid the impression of judicial generosity which could lead to unfortunate results. This caveat was adequately expressed by one commentator:

"In considering the propriety of awarding attorneys' fees and fixing the amount thereof in a particular action, the court must exercise caution lest it deplete the recovery when the class is successful or unduly encourage the institution of class suits by creating an impression of judicial generosity in these cases. The class action

device must be protected against the taint that it is a source of strike suits promoted by attorneys who simply are seeking fat fees or that it fosters an unseemly race to the courthouse among lawyers who represent different members of the class and wish to acquire representative and lead counsel status."

7A Wright and Miller, Federal Practice and Procedure, § 1803 at 292 (1972). Because the likelihood of success on the class action issue was apparently great from the outset, and because the negligence issue was not complex, the latter consideration must prevail. The Court concludes, then, that distribution of attorneys' fees among an isolated segment of class members is unwarranted under the circumstances of this case.

---

1. Of course, it is possible, although unlikely, that an attorney representing another claimant in a different forum may for strategic or dramatic purposes choose not to utilize the admission.