Karen COBURN, Executrix of the Estate
of Orville Coulter, Deceased, et
al., Plaintiffs,

v.

4-R CORPORATION et al., Defendants.

Civ. No. 77-79.

United States District Court,
E. D. Kentucky,
Covington Division.

Dec. 19, 1977.

Gene Mesh, Cincinnati, Ohio, for plaintiffs.

James G. Osborne, Covington, Ky., for defendants.

## ORDER

CARL B. RUBIN, District Judge.

This matter is before the Court for consideration of certification as a class action.

The litigation herein arises out of a fire at the Beverly Hills Supper Club, Southgate, Kentucky, on May 28, 1977.

The plaintiffs in these actions are either representatives of the estates of persons killed, representatives of next-of-kin of persons killed, or persons themselves injured in such fire. There appears to be a common status of business invitees among those killed or injured with apparently identical actions against the defendants. At this point in the litigation it would seem that a defendant is either liable to all business invitees or he is liable to none.

Rule 23 of the Federal Rules of Civil Procedure imposes specific obligations upon a District Court where class action status is sought. The Court must make a determination "as soon as practicable . . . whether it is to be so. maintained", Rule 23(c)(1), Fed.R.Civ.P.; *See also Senter v. General Motors,* 532 F.2d 511 (6th Cir. 1976), *cert. denied* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1977).

Rule 23(a) permits a member of a class to sue as a representative party of: [1] a class so numerous that joinder of all members is impracticable (Rule 23(a)(1), Fed.R.Civ.P. [Numerosity]; [2] with common questions of law or fact, Rule 23(a)(2), Fed.R.Civ.P. [Commonality]; [3] where the claims of the representatives are typical of the claims of the class, Rule 23(a)(3), Fed.R.Civ.P. [Typicality]; and [4] where such representative party will fairly and adequately protect the interests of the class, Rule 23(a)(4), Fed.R. Civ.P. [Fair Representation]).

If the foregoing are satisfied, there must be in addition the existence of a fact situation described in Rule 23(b)(1), (2) or (3).

For purposes of this discussion the Court will limit its consideration to Subsection (b)(1).

The prosecution of separate actions by . . . individual members of the class would create a risk of . . . adjudication . . . which would . . . substantially impair or impede their [other members of the class] ability to protect their interests . . . .

## I

## PREREQUISITES TO A CLASS ACTION

*"Numerosity"—23(a)(1)*

■ We deal with a class in excess of 200.[1] The United States Court of Appeals for the Sixth Circuit has previously held that a class of 35 was sufficient to meet the numerosity requirement. *Afro American Patrolmen's League v. Duck,* 503 F.2d 294 (6th Cir. 1974).

*"Commonality"—23(a)(2)*

■ As business invitees injured or killed on the premises of the invitor, the questions of law as to liability at least would be common to all such persons. It is not apparent at this time that any defendant could assert a defense against only a single invitee.[2]

All plaintiffs share a common interest in the distribution formula of whatever fund may exist.

*"Typicality"—23(a)(3)*

■ The proposed representative of the class asserts claims that are typical of the class because she is the legal representative of a business invitee killed on the premises. For purposes of the determination of liabili-

---

1. The deaths resulting from the disaster can be fixed at 164. The number injured has not been fixed with precision. Estimates range from 50 to 60.

2. It has been asserted that among the killed or injured were employees of defendant 4–R Corporation who were covered by Workmen's Compensation. While it may be necessary to create a subclass for such persons, their existence cannot defeat a right to class action.

ty at least, the claims of the representative are the claims of the class as above noted.

*"Adequate Representation"—23(a)(H)*

█ This Court has previously approved a committee of lead counsel who are experienced in tort litigation, class action litigation and the substantive law of Kentucky. The ability and dedication of lead counsel insure that the class will have representation equal to the best in this area. The class is truly in good hands.

In view of the foregoing the Court finds that each of the prerequisites of Rule 23(a), Fed.R.Civ.P., have been met.

## II

### CLASS ACTIONS MAINTAINABLE

The requirements of Rule 23(b), Fed.R. Civ.P., present a more difficult problem. The application of class actions to mass tort situations is not uniform. While there is a division among commentators and among the courts that have considered this question, there is no guidance to be found in this circuit. Neither the United States Court of Appeals for the Sixth Circuit, nor any District Court in this circuit has published a consideration of the question.

A holding that this matter is maintainable in accordance with Rule 23(b)(1), Fed.R. Civ.P., finds support in the scholarly reasoning of The Honorable C. Clyde Atkins in the case of *Hernandez v. Motor Vessel Skyward,* 61 F.R.D. 558, *aff'd without published opinion* 507 F.2d 1278 (5th Cir. 1975). Of significance to the matter at hand, Judge Atkins dealt with a mass tort situation with a limited common fund exhaustable by some of the prospective claimants.[3]

To support the view that we deal with a limited fund, probably inadequate to meet all claims of those killed and injured, the Court notes the following: 1. Claims well in excess of $1,500,000,000 have already been asserted in the suits now on file.

2. Judgments in 164 actions for wrongful death alone might reasonably exceed $16,-000,000. Verdicts in excess of $100,000 for wrongful death are not unusual and verdicts in excess of $500,000 are not unknown. Damages for injuries are not calculable at this stage.

3. Defense counsel has advised the Court that assets of defendant 4–R Corporation are of the order of $3,000,000.

4. Five individuals and five employees of the Commonwealth of Kentucky have been sued personally with both the extent of their liability and an ability to respond in damages being unknown.

5. Two public defendants, the Commonwealth of Kentucky and the City of Southgate have been dismissed by reason of sovereign immunity. (See Orders of November 18, 1977 and November 30, 1977)

6. The Union Light, Heat & Power Company is likewise a party defendant with unknown aspects of liability and ability to respond.

There is good reason to believe from the foregoing that total judgments might substantially exceed the ability of defendants to respond. The Court makes no determination of liability of any or all defendants. It cannot be stated with assurance that judgments, if obtained, would be unpaid. But, it likewise cannot be said with assurance that judgments for wrongful death and injuries reasonably foreseeable could be satisfied in toto. In no event, however, should this litigation become an unseemly race to the courtroom door with monetary prizes for a few winners and worthless judgments for the rest.

As a counter to *Hernandez,* there is authority which holds that mass tort litigation does not lend itself to class action. Indeed, the United States Court of Appeals for the Ninth Circuit has specifically held that paragraphs (b)(1) and (b)(2) of Rule 23 of the Federal Rules of Civil Procedure do not

---

**3.** The *Hernandez* case dealt with claims of passengers for food poisoning on a cruise ship known as "The Skyward". 46 U.S.C. § 183 limits the liability of the owner of a seagoing vessel for loss of life or bodily injury. There is thus created by statute a limited fund to which claimants may look irrespective of the solvency of the ship owners.

permit certification in mass tort litigation. *McDonnell Douglas Corp. v. United States District Court for the Central District of Calif.*, 523 F.2d 1083 (9th Cir. 1975). While no other circuit has yet taken a similar position, the view of any circuit court is persuasive at least. A careful examination of the *McDonnell* case reveals that the circuit court pointed out that class actions might be maintainable under (b)(1)(B). It did not overrule a previous holding of such circuit that class actions are permitted under subdivision (b)(1)(B) only if separate actions "inescapably will alter the substance of the rights of others having similar claims". *Lamar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973).

In a subsequent decision the Court of Appeals for the Ninth Circuit noted circumstances where mass tort litigation might appropriately be handled as a class action. In *Green v. Occidental Petroleum Co.*, 541 F.2d 1335 at page 1340, Footnote 9 the following statement is made: "It is conceivable, of course, that the claims of named plaintiffs would be so large that if the action were to proceed as an individual action, the decision 'would as a practical matter be dispositive of the interests of the other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests. Federal Rules of Civil Procedure 23(b)(1)(B).' This would be the case where the claims of all plaintiffs exceeded the assets of the defendant *and hence to allow any group of individuals to be fully compensated would impair the rights of those not in court.*" (emphasis added)

See 3(b) Moore's *Federal Practice* ¶ 22.35[2] 1975.

■ Faced with contradictory nonbinding authority, a court must select that course of action which appears at the time to better assure equality of treatment for all litigants. Determinations of class action are only conditional and may always be altered or amended before a decision on the merits.[4] If further proceedings in this matter disclose a different fact predicate, this Court is confident that counsel will not hesitate to make such facts known and prompt reconsideration will be given.

■ Accordingly, the Court does find that pursuant to Rules 23(b)(1)(A) and 23(b)(1)(B) there is a risk of adjudications awarding damages to individual members of the class that might impose inconsistent standards of conduct upon defendants or might so reduce the fund of money available as to substantially impair or impede the ability of other members of the class to protect their interests. This litigation may therefore proceed as a class action.

The Court does define the class as follows:

All persons who as legal representatives of persons killed or injured and all persons who in their own right as persons injured in a fire at the Beverly Hills Supper Club on May 28, 1977 may assert claims for damages against persons responsible therefor.

Such class shall be divided into the following subclasses:

A. Business invitees against whom no defense of contributory negligence or assumption of risk is successfully asserted;

B. Employees of one or more of the defendants who by reason of the Workmen's Compensation laws of the Commonwealth of Kentucky are barred from asserting claims against their respective employers.

Subclasses may be divided into additional subclasses in the future.

Pursuant to Rule 23(d)(2), plaintiffs are directed to give notice to the class by first class mail addressed to the last known place of address of all persons known to have been killed or injured in the Beverly Hills fire. Where the name and address of the legal representative of the foregoing is known, similar notice shall be given to such legal representative. In addition, notice shall be published in the *Cincinnati Enquirer* in all editions including its Kentucky

---

4. Rule 23(c)(1), Fed.R.Civ.P.

Edition, in the *Cincinnati Post* in all editions including its Kentucky Edition, in the *Dayton Daily News,* the *Dayton Journal Herald,* the *Louisville Courier Journal* and in any other newspaper of general circulation exceeding 50,000 distributed within a 100 mile radius of Campbell County, Kentucky.

This matter will tentatively proceed to trial as follows:

1. Upon completion of all pretrial discovery and disposition of all pretrial motions, the issue of liability as to each subclass will be tried. Upon a finding of liability against one or more of the defendants a single jury may be empaneled for the purpose of determining monetary damages to each member of each subclass. Such jury may be instructed to return verdicts expressed in percentages rather than expressed in dollars. In the alternative, such jury may be instructed to return verdicts based upon a formula that will be supplied to them.

   Upon unanimous agreement by counsel, the Court will appoint a master under Rule 53 of the Federal Rules of Civil Procedure, or follow any other agreed procedure for the purpose of apportioning damages. In the absence of such unanimous agreement, damage questions will be submitted to a jury as above set forth.

2. Lead counsel as previously approved by the Court will represent the class in accordance with Pretrial Order No. 1. In the presentation of individual damages to a jury or to a master counsel selected by a member of the class may be permitted to make such presentation.

The foregoing shall be deemed as tentative only. A hearing will be held prior to trial at which time counsel may be heard on trial procedures and all other matters that may be involved therein.

IT IS SO ORDERED.