**In re FEDERAL SKYWALK CASES.**

United States District Court,
W. D. Missouri, W. D.

Jan. 25, 1982.

Irving Younger, Williams & Connolly, Washington, D. C., Robert Gordon, Anderson, Granger, Nagels, Lastelic & Gordon, Kansas City, Mo., Robert L. Collins, Collins & Steinburg, Houston, Tex., for plaintiffs.

Robert Driscoll, Stinson, Mag & Fizzell, Joseph Sherman, Jackson & Sherman, Michael E. Waldeck, Niewald, Risjord & Waldeck, Kansas City, Mo., for defendants.

C. Patrick McLarney, Shook, Hardy & Bacon, Kansas City, Mo., John Shamberg, Schneider, Shamberg & May, Shawnee Mission, Kan., Max Foust, Morris & Foust, Kansas City, Mo., for plaintiffs-intervenors.

## ORDER AND MEMORANDUM

SCOTT O. WRIGHT, District Judge.

This action arises out of the collapse of two skywalks at the Hyatt Regency Hotel of Kansas City, Missouri on July 17, 1981. Plaintiff, Molly Riley, moves this Court to certify as a class action those claims of business invitees of the hotel who suffered physical, mental or property damage as the result of the collapse of the two skywalks. Several plaintiff-intervenors and defendants oppose class certification for varied reasons. Other defendants have not expressly opposed certification, but have asked the Court to delay its ruling on the motion to certify a class action until all of the parties have had an opportunity to voluntarily resolve their differences through settlement. All interested parties orally argued the motion on December 10, 1981.

On December 24, 1981, plaintiffs-intervenors moved to dismiss the motion for class certification on the ground that plaintiff Riley had failed to join all parties needed for a just adjudication. Ms. Riley, a Kansas resident, did not join two Kansas defendants because she lacked diversity of citizenship as to them. Since two defendants could not be bound by any determinations made at a single trial if Ms. Riley were named as the class representative, plaintiffs-intervenors' motion to dismiss her motion to certify is granted. This Court, however, may certify a class action on its own motion. Thus, for the reasons which follow, the Court concludes that the most principled, efficient and expedient manner in which to conduct the litigation stemming from the tragic events of July 17 is in accordance with the provisions of Rule 23 of the Federal Rules of Civil Procedure. Accordingly, the Court determines that federal court plaintiffs Stover, Vrabel, Grigsby and Abernathey shall represent the class members, certifies a Rule 23(b)(1)(A) class action on the issues of liability for compensatory damages and liability for punitive damages, and certifies a Rule 23(b)(1)(B) class action on the issues of liability for punitive damages and the amount of punitive damages. Finally, the Court permits the individual unnamed plaintiffs to continue to settle their respective claims against any or all defendants.

## I. *Summary of Skywalk Litigation*

On July 17, 1981, two skywalks in the central lobby of the Hyatt Regency Hotel in Kansas City, Missouri collapsed killing 113 persons and causing bodily injury to at least another 212 persons. Three days later the first lawsuits were filed in this Court and in the Circuit Court of Jackson County, Missouri. As of the date of this order, approximately 150 lawsuits have been filed in either of these two courts. In anticipation of the deluge of litigation that the skywalk disaster was certain to generate, the state and federal courts moved with alacrity to consolidate their respective cases for pretrial discovery. Liaison committees of plaintiffs' and defense counsel were selected to jointly initiate and conduct pretrial discovery.

Plaintiff Riley initially filed a civil action seeking class certification by the Circuit Court of Jackson County, Missouri on July 31, 1981. On September 1, 1981, Ms. Riley filed a similar action in this Court. In her action in this Court, Riley, a resident of Kansas, did not sue certain Kansas defendants. She dismissed her state court suit on September 24, 1981, and then moved this Court to certify a class action naming her as the class representative of all business invitees who were present at the Hyatt Regency Hotel when two of its skywalks collapsed. On December 10, 1981, a hearing was conducted to determine whether her motion for class certification should be granted. From that hearing the Court finds the following facts to be true:

1. The collapse of two skywalks in the Hyatt Regency Hotel on July 17, 1981 killed 113 persons and caused bodily injury to at least another 212 persons.

2. A substantial number of persons who were present in the central lobby when the skywalks fell might have suffered emotional distress or might have failed to report their physical injuries.

3. Approximately 150 civil lawsuits have been filed in either this Court or the Circuit Court of Jackson County, Missouri.

4. Those persons who have filed lawsuits presently seek compensatory damage awards in excess of one billion dollars and punitive damage awards in excess of 500 million dollars.

5. The various defendants implicated by these suits are protected by liability insurance coverage in the aggregate amount of 333 million dollars.

6. By way of *in camera* revelation, the Court is cognizant of the approximate net worth of defendants Hyatt Corporation, Hallmark Cards Corporation, and Crown Center Redevelopment Corporation.

7. Numerous minor and some substantial claims have already been amicably settled.

8. The liability insurance carriers have been and are eager to continue to discuss the settlement of any legitimate claim.

After the December 10, 1981 hearing, plaintiffs-intervenors moved to dismiss Riley's motion for class certification on the ground that she failed to join certain parties who are needed for a just adjudication. The Court found merit in the plaintiffs-intervenors' motion to dismiss and, as a consequence, commenced a search of court records in order to determine which federal court plaintiffs could serve as representatives of the class. The Court notices that plaintiffs Stover, Johnson, Vrabel, Grigsby and Abernathey have citizenships diverse from the defendants who have been sued. Only plaintiff Johnson, an intervenor in this action, has recorded opposition to the certification of the class action.

## II. *Prerequisites to A Class Action*

■ The class action device, as contemplated by Rule 23 of the Federal Rules of Civil Procedure, is the proper tool for the accomplishment of principled, efficient and expeditious adjudication of skywalk claims which threaten to expose defendants to repeated trials of the compensatory and punitive damages issues, which threaten to leave many claimants without a practical chance for redress of punishable acts, and which threaten to congest the state and federal courts of this city for many years. This Court views Rule 23 as the key building block in the federal courts' continuing effort to make the civil procedural system more responsive to the needs of contemporary litigation. The magnitude of the litigation spawned by the collapse of two skywalks challenges this Court to administer these cases with flexibility and imagination. While other procedural vehicles might provide adequate guidelines for resolution of the complex issues posed by these cases, the circumstances of this litigation compel this Court to adopt the far superior procedures of Rule 23 for the resolution of the many claims arising out of an unfortunate tragedy.

### A. *Diversity Jurisdiction*

■ The jurisdictional requirements of a conventional civil suit apply to class actions. *See Snyder v. Harris*, 394 U.S. 332, 340, 89 S.Ct. 1053, 1058, 22 L.Ed.2d 319 (1969). In the context of a class action, only the citizenship of the named parties is relevant to the determination of jurisdiction. *Id.* Mr. Justice Black stated in *Snyder* that if

one member of a class is of diverse citizenship from the class' opponent, and no nondiverse members are named parties, the suit may be brought in federal court even though all other members of the class are citizens of the same State as the defendant and have nothing to fear from trying the lawsuit in the courts of their own State.

*Id.* at 340, 89 S.Ct. at 1059. Since at least two defendants which have been sued in the course of this litigation are of the same citizenship as plaintiff Riley, Riley cannot serve as the named representative of the class if the Kansas defendants are to be bound by the determinations made at the trial of the class action. As is subsequently discussed, the Court intends to try this lawsuit only once and to bind all parties to the determinations made at that single trial. Thus, Riley will not do as the named representative because her citizenship is not diverse from all the opponents of the class.

The citizenships of plaintiffs Stover, Vrabel, Grigsby and Abernathey, however, are diverse from the citizenships of all the defendants who have been sued. In addition, there appears to be no question that their claims, like the claims of all other members of the class, exceed the $10,000 amount in controversy requirement of 28 U.S.C. § 1332. The Court, therefore, concludes that, with these plaintiffs as the named representatives of the class, diversity jurisdiction exists and that all parties needed for a just adjudication of the issue presented by this suit can be joined.

### B. *Rule 23(a)*

■ Rule 23(a) provides that these plaintiffs may sue as the representative parties of a class of all business invitees present at the collapse of the skywalks if

(1) The class is so numerous that joinder of all members is impracticable, (2)

there are questions of law or fact common to the class, (3) the claims or defenses of representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Before the circumstances of this case can be analyzed in terms of those four prerequisites, the introductory language of Rule 23(a) implicitly requires two preliminary determinations. First, a class, which is capable of accurate description, must actually exist. *Vietnam Veterans Against The War v. Benecke*, 63 F.R.D. 675, 679 (W.D.Mo. 1974). The members of the proposed class are readily identifiable. They include all business invitees who were present in the main lobby of the hotel at the moment the two skywalks collapsed. Second, plaintiffs Stover, Vrabel, Grigsby and Abernathey must be members of the proposed class. There does not appear to be any serious question that their claims arise out of deaths and injuries suffered by persons present in the hotel lobby at the time of the skywalks' collapse. If any serious questions do arise, interested parties are obliged to file a motion to decertify.

In addition to satisfying the two preliminary requirements of Rule 23(a), each of the following Rule 23(a) prerequisites have been satisfactorily established:

1. Numerosity. Exactly 113 persons have died as a result of the collapse of the two Hyatt skywalks. At least another 212 persons suffered injuries which required hospitalization or treatment at an area hospital on the day of the collapse. In addition, a substantial number of people were present in the central lobby of the hotel when the skywalks fell. Though this latter group of people may not have suffered any physical injuries which required immediate attention, they might have suffered emotional distress as a consequence of the disaster. It has been estimated that a crowd of 1,500 to 2,000 persons were in the lobby of the hotel at the moment of the collapse. A class which includes all business invitees present when the skywalks fell is sufficiently numerous to satisfy the requirement that joinder of all members of the class is "impracticable." *Coburn v. 4–R Corp.*, 77 F.R.D. 43, 44 (E.D.Ky.1977). Rule 23(a)(1) does not require a showing that joinder is "impossible." A showing of strong litigational inconvenience in the prosecution of claims separately by the proposed class members is sufficient. Thus, the first prerequisite of Rule 23(a) is satisfied.

2. Commonality. The claims of every member of the class arise from the collapse of the two skywalks. With the single exception of the amount of individual compensatory damages, the operative facts concerning each claim are identical. There are no issues of liability or defenses to liability for compensatory damages peculiar to individual members of the class. The issue of liability for punitive damages may require separate treatment of the wrongful death and survival claims. The Court, however, is prepared to provide the distinct treatment through the formation of a subclass composed of wrongful death and survival actions in the event that it is subsequently determined that punitive damages are not awardable to wrongful death or survival claimants. Further, Rule 23(a)(2) requires only that there be one or more significant common questions of law or fact. It does not require that "all" questions of fact and law be common and must be distinguished from the requirement of Rule 23(b)(3) that common issues predominate. Thus, the commonality requirement of Rule 23(a)(2) is satisfied. *Like v. Carter*, 448 F.2d 798, 802 (8th Cir. 1971), *cert. denied*, 405 U.S. 1045, 92 S.Ct. 1309, 31 L.Ed.2d 588 (1972).

3. Typicality. The claims of the four named plaintiffs reflect the claims of every other member of the class. Plaintiff Stover and her children seek redress for the allegedly wrongful death of her husband and for the alleged serious injuries she suffered as a result of the collapse. Plaintiffs Vrabel and Abernathey allegedly suffered personal injuries, while the Grigsby plaintiffs have sued to recover for the alleged

wrongful death of their mother. Though the amount of compensatory damages is unique to each member of the class, the legal or remedial theories advanced by the class representative are the same as those advanced by other unnamed members of the class. Thus, the typicality requirement of Rule 23(a)(3) is satisfied. *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 839–30 (8th Cir. 1977), *cert. denied*, 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977).

■ 4. Adequacy. This Court bears an affirmative obligation to ascertain the adequacy of representation and to monitor it throughout the course of the litigation. The duty is grounded on a fairness rationale which recognizes that some class members did not choose this forum or the counsel ultimately selected to shoulder the burdens of this litigation. The adequacy inquiry focuses on the representative parties and the class counsel.

■ The class representatives are able to act as fiduciaries in protecting class interests and have resources available for the prosecution of the certified claims. They do not have any interest which conflicts with interests of other class members, are not motivated by reasons which are unrelated to the circumstances of the case itself, and hold a very substantial stake in the outcome of the controversy. Some parties have asserted that their interest in settling their cases conflicts with the prosecution of a class action. Their interest in settling their claims, however, is not restricted by this order. The only parties who cannot settle their claims prior to the conclusion of a jury trial of the certified issues are those named as the class representatives. If any of the plaintiffs named as class representatives in this order would want to negotiate the settlement of their case prior to trial, they should notify this Court within ten (10) days of the date of this order.

The Court selects the counsel for plaintiff Riley to serve as lead counsel for the prosecution of this class action. Counsel for plaintiffs Stover, Vrabel, Grigsby and Abernathey may assist plaintiff Riley's counsel. These counsel can adequately represent the members of the class. The lead class counsel have experience in complex litigation and are ably qualified to conduct the proposed litigation. In the estimation of this Court, lead counsel have exhibited sufficient motivation, competence and resources to successfully maintain a class action. The Court also notices that counsel for Stover, Vrabel, Grigsby and Abernathey are able attorneys who have extensive experience in the areas of personal injury law and will grant them ten (10) days from the date of this order to withdraw as assistant class counsel if they would prefer not to serve. In addition to these class counsel, the Court has received numerous offers of assistance from interested attorneys and will grant other interested attorneys an additional seven (7) days from the date of this order to submit their names for service as class counsel. In light of all of the above, the Court concludes that the four named plaintiffs are adequate class representatives and that the counsel presently selected by the Court can adequately represent the interests of the class.

### III. *Maintainable Class Actions Under Rule 23(b)*

Not only must this action meet all the prerequisites of a class action as listed in subdivision (a) of Rule 23, but it must also satisfy at least one of the three sections of subdivision (b) of Rule 23. Riley initially moved this Court to certify a class action on the issues of liability for and amount of punitive damages under Rule 23(b)(1)(B) and the issue of liability for compensatory damages under either Rule 23(b)(3) or Rule 23(b)(1)(B). While no other plaintiff joined in Ms. Riley's motion to certify a class action, counsel for numerous other plaintiffs either have voiced their support for the utilization of the class action device or have offered their services in the event that a class action is certified. The Court has also received correspondence from individual claimants who have questioned the true motivation of those counsel who oppose class certification and have asked the Court to guard the best interests of all the parties involved. Though some of the defendants

have taken the position in this litigation that they cannot lawfully be subject to multiple punitive damage awards in successive suits, none has moved this Court to certify a class action in order to protect them from multiple punitive damage awards or incompatible standards of conduct. Some defendants, while neither opposing nor supporting certification, have asked the Court to defer its ruling on the motion to certify until all of the parties have had an opportunity to voluntarily resolve their legitimate claims through settlement.

 Rule 23(c)(1) directs this Court to determine whether a class action is to be maintained as soon as practicable after the commencement of the action. Since the ruling of this Court does not impinge on the ability of unnamed plaintiffs and defendants to settle their differences, there is no just reason for delay of this decision. Although this Court has denied plaintiff Riley's motion to certify a class because complete diversity was lacking, this Court, nonetheless, enjoys a wide range of discretion in determining whether a class action ought to be maintained, *Senter v. General Motors Corp.*, 532 F.2d 511, 520–21 (6th Cir.), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976); *Castro v. Beecher*, 459 F.2d 725, 731–32 (1st Cir. 1972), and what issues ought to be certified, *Gardner v. Westinghouse Broadcasting Co.*, 559 F.2d 209, 212 (3d Cir. 1977). *See generally, American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). It is this Court's firm belief that the preservation of the collective best interests of all parties concerned with this litigation and the avoidance of wasteful repetitive litigation are best accomplished by trying the issues of liability for compensatory damages, liability for punitive damages and amount of punitive damages only once. To that end, this Court, on its own motion, determines that a Rule 23(b)(1)(A) class action on the issues of liability for compensatory damages and liability for punitive damages, and a Rule 23(b)(1)(B) class action on the issues of liability for and amount of punitive damages must be certified.

### A. *Requirements of Rule 23(b)(1)(A).*

 Rule 23(b)(1)(A) directs the Court to consider whether multiple individual suits aimed at determining any or all defendants' liability for compensatory and punitive damages would have an adverse effect on those defendants. The subdivision provides that a class action may be maintained if the prosecution of separate actions by individual members of the class would create a risk of "inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." Thus, in order to consider Rule 23(b)(1)(A) as a proper vehicle for resolving the liability issues, there must be a risk that separate actions will, in fact, be tried if a class action is not certified.

Given the nature of the personal injury and punitive damage claims filed in this litigation, this Court would be embarking on utter naivete if it concluded that there was not a substantial likelihood of multiple suits being tried. *See Hernandez v. Motor Vessel Skyward*, 61 F.R.D. 558, 561–62 (S.D. Fla.1974), *aff'd* 507 F.2d 1278 (5th Cir. 1975). Not all claimants will be mollified by the amounts offered in settlement, since they have expressed an avowed determination to try to punish those defendants, if any, which were responsible for the tragic events of July 17. While this Court wholeheartedly encourages the continued settlement of legitimate claims, and is mindful that the vast majority of claims may be settled, it cannot, in good conscience, allow a minority of claimants to take any or all defendants to trial time and time again until a compensatory or punitive damage judgment is obtained. *Hernandez, supra* at 561.

Though no defendant has expressly moved this Court to certify a Rule 23(b)(1)(A) class action in order to protect it from successive punitive damage awards or from inconsistent adjudications on the liability issues, the Court believes that Rule 23(b)(1)(A) certification is necessary as a ready and fair means of achieving unitary

adjudication. *See,* Advisory Committee Comments, 39 F.R.D. 98, 100 (1966). *See also Hernandez, supra* at 560. One or more of the defendants risk being faced with incompatible standards of conduct if varying or inconsistent adjudications with respect to individual members of the class were obtained on the issues of liability for compensatory or punitive damages. *Coburn v. 4–R Corp.,* 77 F.R.D. 43, 46 (E.D.Ky. 1977); *Hernandez, supra* at 561. As in the case at bar, the defendants in the *Hernandez* case objected to the certification of a class action on the ground that certification would prevent the amicable settlement of legitimate claims. *Id.* at 559 n. 3. The *Hernandez* court did not allow the settlement process to continue because of the limited fund available to pay compensatory damages, but certified the class in order to avoid a multiplicity of suits and inconsistent or varying adjudications. *Id.* Unlike the circumstances facing the *Hernandez* court, in the case at bar, there is no evidence of a limited fund with respect to the payment of compensatory damages. Thus, the settlement of claims for compensatory damages may continue.

Since a Rule 23(b)(1)(A) class action on the issues of liability for compensatory and punitive damages offers economy of effort and uniformity of result without imposing undue debilitation of the procedural or substantive safeguards of members of the class or of persons defending against the class action, this Court concludes that a Rule 23(b)(1)(A) class action on the issues of liability for compensatory and punitive damages must be certified.

### B. *Requirements of Rule 23(b)(1)(B).*

Rule 23(b)(1)(B) provides for class treatment in cases in which separate suits might have undesirable effects on the class members. The passage states that a class action might be maintained if individual actions would create a risk of individual adjudications that "would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability

to protect their interests." While Rule 23(b)(1)(A) focuses on the possible prejudice to the party opposing the class, Rule 23(b)(1)(B) focuses on the ability of the individual members of the class to protect their interests if other class members brought separate actions. It is quite common for suits brought under Rule 23(b)(1) to meet the tests of clause (A) and clause (B) of that provision. *See generally* 7A Wright and Miller, Federal Practice and Procedure, § 1772 n. 72 (1972 & Supp.1981). So long as a class action is maintainable under Rule 23(b)(1), nothing turns on which clause is controlling. *Id.* at § 1772.

Rule 23(b)(1)(B) most often applies to cases that involve multiple claims to a fund which may be insufficient to satisfy all the claims. *See, e.g., In re "Dalkon Shield" Litigation,* 526 F.Supp. 887 (N.D.Cal., 1981); *Coburn v. 4–R Corp.,* 77 F.R.D. 43 (E.D.Ky. 1977); *Hernandez v. Motor Vessel Skyward,* 61 F.R.D. 558 (S.D.Fla.1974), *aff'd,* 507 F.2d 1278 (5th Cir. 1975). Where a limited fund exists, individual members of the class face a very real risk that the winner of the race to the courthouse might be awarded all of the monies available. Though the availability of sufficient funds to cover the claims for compensatory damages is not presently in question, there is a question as to whether sufficient funds are available to pay awards of punitive damages.

At the present time, the funds available to pay for punitive damages appear to be limited. For example, the continued payment of compensatory damages necessarily depletes the resources of the defendants who continue to settle claims against them. Second, there is the possibility that few, if any, defendants will be found liable for punitive damages. No defendant has unlimited assets and most do not have sufficient assets to warrant a sizable punitive damage award. Finally, there is some uncertainty under Missouri law as to whether a single defendant can be liable for more than one award of punitive damages. *See Monsanto Co. v. Parker,* No. 43829 (Mo.App., E.D., argued Dec. 9, 1981). If a defendant can only be punished once,

then the first claimant to get an award is the first and only winner. The Court is not inclined to permit the sacrifice of one aggrieved party's claim for the sole benefit of another aggrieved party.

Because of the uncertainty under Missouri law as to whether a single defendant can be liable for more than one award of punitive damages, the plaintiffs who have intervened move this Court to abstain from ruling on the motion for class certification until after a Missouri appellate court has resolved the question. It is this uncertainty, however, which requires this Court to refrain from abstaining. So long as the question is unsettled, the spectre of a limited fund remains. Even after that particular question is resolved by the courts of Missouri, the possibility of a limited fund might still exist. The Court, therefore, denies the intervenors' motion to abstain from certifying a Rule 23(b)(1)(B) class action.

It is the primary concern of this Court that legitimate claimants receive recompense for the actual damages that they have suffered. Because of this overriding concern, the Court will permit the continued settlement of claims even though each settlement diminishes the funds available to pay for punitive damages. Though the Court considers an award of punitive damages secondary to compensation for actual damages, a claimant's interest in exacting punishment against a deserving defendant is recognized by the law and must be protected. Only a single class-wide adjudication of the issues of liability for and amount of punitive damages can protect the interest of every victim in receiving his or her just share of any punitive damage award.

There is one final consideration that indirectly bears on this Court's decision to certify a Rule 23(b)(1)(B) class action. Those counsel who presently represent more than one client and who have sought punitive damages on behalf of each of those clients face a potential conflict of interest. In the context of a limited fund, an attorney who represents more than one client may be put in a conflicting position when

forced to decide which case to proceed with first. *See* Disciplinary Rule 5–105(B) and Rule 5–105(C). The interests of one client may ultimately be sacrificed for the benefit of another client. Even if a limited fund did not exist, if Missouri law precludes multiple awards of punitive damages against a single defendant, the same result obtains. Plaintiff-intervenors assert that the conflict is readily resolved through full disclosure to their clients and eventual settlement of their cases. One of the attorneys for the intervenors, however, admitted at the class certification hearing that he had not disclosed the potential conflict to his clients. The Court further believes that counsel who represent more than one client may still be in a position of conflict if they must advise their clients to settle in order to insulate themselves from a conflict of interest on the punitive damages claims. The Court is mindful that counsel must always avoid even the mere appearance of impropriety.

Thus, since a class-wide resolution of the punitive damages issues protects not only the class members from the spectre of an exhausted fund, but may also resolve the potential conflicts of interest faced by counsel who represent more than one punitive damage claimant, the Court deems it wholly appropriate to certify a Rule 23(b)(1)(B) class action on the issues of liability for and amount of punitive damages.

IV. *Intervenors' Motion to Disqualify*

On January 19, 1982, the plaintiffs-intervenors filed a motion, in accordance with 28 U.S.C. § 455, in which they asked the Court to disqualify itself from the skywalk litigation on the ground that its impartiality might reasonably be questioned. The motion is presumably generated from a series of conversations which counsel for the intervenors engaged in with counsel for plaintiff Stover.

In the course of evaluating the issues raised by the certification of a class action in the skywalk litigation, the Court commenced a survey of its records to determine which plaintiffs, who have filed suit in this Court, could serve as representatives of a class action. The Court noticed that plain-

tiffs Stover, Johnson, Vrabel, Grigsby and Abernathey could serve as class representatives. Court records reflected that only plaintiff Johnson, an intervenor and an initiator of the disqualification motion, is fervently opposed to the certification of a class action. With respect to the other four parties, the Court noticed that its records did not indicate what positions these parties held concerning the certification question. Before naming these parties as class representatives on the Court's own motion, the Court deemed it courteous to inquire as to their respective positions. To that end, the Court first contacted counsel for plaintiff Stover.

Counsel for plaintiff Stover were informed that the Court was contemplating naming their client as one of the representatives of a class action if the Court decided to certify a class action. The Court inquired as to their position on the certification issue. Counsel for Stover were not able to give the Court an immediate answer and advised the Court that they could publish their client's position within ten days as they were scheduling a settlement conference with defense counsel.

Before the Court was able to inquire about the respective positions of the other three parties, counsel for the intervenors moved this Court to disqualify itself from the skywalk litigation, alleging that the Court's survey had given plaintiff Stover an advantage in settling her case and, thus, raised the question of whether the Court's impartiality might reasonably be questioned. Though this Court, to whom the motion to disqualify was addressed, presumably knows more about the factual background of its involvement in matters that form the basis of the motion than do the movants, *Laird v. Tatum*, 409 U.S. 824, 824 n. 1, 93 S.Ct. 7, 8 n. 1, 34 L.Ed.2d 50 (1972) (Memorandum of Mr. Justice Rehnquist), the Court considers the motion as if the allegations are true.

The intervenors have alleged that this Court informed counsel for Stover that a class action would be certified, that Stover would serve as the representative of the class members and that an order certifying a class action would not be issued on January 15, 1982. The intervenors further allege that plaintiff Stover gained an advantage not available to the intervenors because she knew that she did not have to settle her case before January 15, 1982 and that she could pressure the defendants into paying her a premium to keep her from becoming a class representative.

 Assuming that all of these allegations are entirely true, even though they are not, the Court must scrutinize its impartiality as a judicial officer under Section 455(a) which provides that this Court shall disqualify itself from any proceeding in which its "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). While disqualification is certainly not automatically required merely upon the filing of an affidavit, *Mavis v. Commercial Carriers, Inc.*, 408 F.Supp. 55, 61 (C.D.Cal.1975), it is incumbent on this Court to determine whether this is a proceeding in which its impartiality might be questioned. The standard of general disqualification is one of reasonableness and is not interpreted to include a "spurious or loosely based charge of partiality." *Mavis, supra*, at 61. The 1974 amendments to 28 U.S.C. § 455 codified Canon 3 C of the American Bar Association Code of Judicial Conduct. In so providing, Congress cautioned:

While the proposed legislation would remove the "duty to sit" concept of present law, a cautionary note is in order. No judge, of course, has a duty to sit where his impartiality might reasonably be questioned. However, the new test should not be used by judges to avoid sitting on difficult or controversial cases.

At the same time, in assessing the reasonableness of a challenge to his impartiality, each judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision. Disqualification for lack of impartiality must have a *reasonable* basis. Nothing in this proposed legislation should be read to warrant the

transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants ought not to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choosing.

H.R.Rep.No. 93–1453, House Judiciary Committee, 93d Cong., 2d Sess., 1974 U.S.Code Cong. & Ad.News, 6351, 6355 (emphasis in original).

In applying the objective standards established by Congress in Section 455(a), the Court finds the legislative history enlightening. The decisions of other courts that have faced disqualification motions provide some guidelines, see Federal Judicial Conference, *Decisions Construing the Judicial Disqualification Statute* (1977), but those decisions, unlike decisions governing other issues of law, cannot directly bear on the question that this Court must resolve. *Bradley v. Milliken*, 426 F.Supp. 929, 934 (E.D.Mich.1977). Even though introspection might dictate disqualification or qualification where other judges, who necessarily have incomplete knowledge, could reach alternative conclusions, the cases construing Section 455(a) illustrate the wisdom of having this judge resolve, in the first instance, the question of his own disqualification. *Id.* citing *United States v. Mitchell*, 377 F.Supp. 1312, 1323 n. 8 (D.D.C.1974) (Sirica, C. J.). The legislative history implies the same.

The intervenors assert that this Court was no longer impartial in this case when it inquired as to the position of plaintiff Stover on the issue of class certification. According to intervenors, plaintiff Stover gained an unfair advantage in the settlement of her claims. The advantage was presumably gained through knowledge that an order certifying a class action would not be issued on January 15, 1982. The Court has never imposed a deadline for the issuance of any of its orders in any case. The intervenors do not point to any evidence which demonstrates that the Court had bound itself to resolve the class certification on any particular date. The Court had anticipated resolving the certification issues and setting the discovery schedule by mid-January, but a series of motions filed by the intervenors concerning the certification issue have been filed throughout the month of January. Each of these required and have received the Court's attention. The Court, mindful of the great importance of these suits to the people of Kansas City, has tried to process the motions filed in this case as fast as practicable and will continue to do so.

Intervenors have not, and cannot, show that this Court had guaranteed that an order would be filed on January 15, 1982, or that the merits of this case were discussed with anyone. Thus, all parties "labored" under the same "supposed" disadvantages. The intervenors assert that they were facing the pressure of a January 15, 1982 settlement deadline. As previously stated, the pressure was self-generated and based on speculations rampant in the legal community. The intervenors had no knowledge of when an order would be issued and did not know what this Court's position would be with respect to the continued settlement of their cases. As this order makes clear, the fear that settlements would be halted by this Court did not materialize. The intervenors likewise assert that the defendants would cease negotiating settlements when an order was issued. The settlement postures of each defendant have not been hampered by this Court and are controlled by the defendants.

It is finally argued by intervenors that plaintiff Stover, knowing that she might be selected as a class representative, could pressure the defendants into a lucrative settlement. This argument presumes that the able defense counsel of this community are susceptible to such pressure and that they would want to "buy-off" a potential class representative. While intervenors are to be commended for asserting the interests of those defendants presently engaged in the settlement process, they have not shown that Stover received more for her claim than her claim was worth. In fact, her case was not settled. As the discussion of the

allegations suggests, the intervenors, in an attempt to avoid a potentially adverse decision, have fashioned these supposed disadvantages out of the winds of speculation.

The Court is alert to the possibility that those who challenge its impartiality are in fact seeking to avoid the consequences of an adverse decision. Though the Court was never sure of what ruling it would make until this order was drafted and entered, the Court did intimate at the December 10, 1981 certification hearing that it was impressed by the availability of the class action device in the skywalk suits. The intervenors, in the representation of their clients' interests, have been the most vocal opponents of class certification. While the Court applauds their zealous representation, it cannot ignore the fact that intervenors truly want to avoid the consequences of an adverse decision and would welcome the opportunity to relitigate the certification issue before another judge. The Court is also cognizant that no active judge in residence of the Western District can accept responsibility for presiding over this case by reason of their previous disqualification due to conflicts of interest.

Even if every allegation made by the intervenors was founded on the truth, this Court concludes that a reasonable person, after considering all of the circumstances, would not question the impartiality of this Court. Thus, the intervenors' motion to disqualify this Court from the continued conduct of this litigation is denied.

## V. *Conclusion*

In order to expeditiously adjudicate the issues raised by this skywalk litigation with a minimum of repetition, expense and delay, the Court firmly believes that the creation of a Rule 23(b)(1)(A) class action on the issues of liability for compensatory and punitive damages, and a Rule 23(b)(1)(B) class action on the issues of liability for and amount of punitive damages best serves the diverse interests of both plaintiffs and defendants. Legitimate claimants may negotiate and execute settlement agreements with those defendants who have vociferously urged this Court to allow the settlement process to continue. Those claimants who want to exact payment for allegedly punishable acts must forego the settlement process and await the trial of the punitive damage issues.

Accordingly, it is hereby

ORDERED that the motion to disqualify is denied. It is further

ORDERED that plaintiff Riley's motion to certify a class action is denied. It is further

ORDERED that a class action is certified and that plaintiffs Stover, Vrabel, Grigsby and Abernathey shall serve as the representatives of the class. It is further

ORDERED that counsel for plaintiff Riley shall serve as lead counsel and that counsel for plaintiffs Stover, Vrabel, Grigsby and Abernathey shall assist lead counsel. It is further

ORDERED that other interested attorneys who would like to be considered as counsel for the class and who have not previously informed this Court of their position have until seven (7) days after the date of this order to submit their names for service as class counsel. It is further

ORDERED that the intervenors' motion for interlocutory appeal is denied. It is further

ORDERED that the intervenors' motion for abstention is denied. It is further

ORDERED that discovery be completed by July 1, 1982, and that the trial of this action be commenced on August 15, 1982.