Marta A. SALA

v.

**NATIONAL RAILROAD PASSENGER CORPORATION, d/b/a "Amtrak".**

Civ. A. No. 88–1572.

United States District Court,
E.D. Pennsylvania.

April 29, 1988.

Allen D. Black, Philadelphia, Pa., for plaintiff.

Richard L. Goerwitz, Jr., Philadelphia, Pa., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiff Marta A. Sala was a passenger on Amtrak Train No. 66 ("The Night Owl") on January 29, 1988, when it collided with a National Railroad Passenger Corporation ("Amtrak") maintenance vehicle and derailed in or near Chester, Pennsylvania. On February 25, 1988, plaintiff filed this Complaint against defendant Amtrak alleging negligence and willful misconduct. Plaintiff now seeks class certification pursuant to Fed.R.Civ.P. 23(a) and (b)(3) of a potential class of all passengers who suffered injuries as a result of the derailment of The Night Owl. Of the approximately one hundred and fifty (150) passengers on board the train, an estimated forty (40) to fifty (50) were injured. For the reasons stated below, this Court will grant plaintiff's motion and certify this action as a class action on behalf of all passengers injured as a result of the January 29th derailment of The Night Owl.

## I.

In order to proceed as a class action, plaintiff must first meet the four requirements of Fed.R.Civ.P. 23(a) which provides in pertinent part:

Prerequisites to a Class Action. One or more members of a class may sue ... as representatives on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Plaintiff must further establish that the action falls within one of the three categories proscribed by Fed.R.Civ.P. 23(b). In this case, plaintiff seeks certification pursuant to Rule 23(b)(3) which allows a class action to be maintained when:

[T]he court finds that the questions of law or fact common to the members of the class predominate over any question affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

It is well established that the burden is on the party seeking to utilize the class action to prove that the particular case satisfies all of the requirements of Rule 23. *Davis v. Romney*, 490 F.2d 1360, 1366 (3d Cir.1974); *Glick v. E.F. Hutton & Co., Inc.*, 106 F.R.D. 446, 447 (E.D.Pa.1985). As the Supreme Court has emphasized, a class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Telephone Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). In determining the certification motion, the court cannot consider the merits of the plaintiffs' case but, rather, must focus exclusively on whether the requirements of Rule 23 have been met. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974).

In the past, courts have not looked favorably upon class certification in mass tort cases on the ground that "significant questions, not only of damages, but of liability and defenses of liability would be present, affecting the individuals in different ways [such that class actions] would degenerate in practice into multiple lawsuits separately tried." Fed.R.Civ.P. 23(b)(3) Advisory Committee's Note. Professors Wright, Miller and Kane explain the past reluctance of courts to certify classes in mass tort situations:

When personal injury and death claims are involved, a strong feeling prevails that everyone enmeshed in the dispute should have his own day in court and be represented by a lawyer of his choice ... Furthermore, the alleged tortfeasor's defenses may depend on facts peculiar to each plaintiff, creating a risk that they may be submerged to the overall magni-

tude of the litigation or that individual issues actually may predominate so that a class action would not be economical or expeditious.

7B C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure* Section 1783, at 71–72 (1986). Of course, such concerns are most pronounced when class certification is sought under Rules 23(b)(1) and 23(b)(2) because of the difficulty of individual plaintiffs opting out of the class under those categories. *See, e.g., Vincent v. Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir.1977); *McDonnell Douglas Corp. v. U.S. Dist. Ct. for Cent. Dist. of Calif.*, 523 F.2d 1083 (9th Cir.), *cert. denied*, 425 U.S. 911, 96 S.Ct. 1506, 47 L.Ed.2d 761 (1975).

■ Nevertheless, class certification may not be denied simply because an action can be classified as a "mass tort". Rather, "[t]he factual and legal issues specific to the particular litigation must be analyzed to determine if certification is proper under Rule 23 and offers a superior method for the fair and efficient adjudication of the controversy ..." *McQuilken v. A & R Development Corp.*, 576 F.Supp. 1023, 1028 (E.D.Pa.1983). Indeed, the determination of class action status, clearly falling within the sound discretion of the district court, demands a careful application of the relevant provisions of the Federal Rules to the specific facts of each case. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S.Ct. 2193, 2200, 68 L.Ed.2d 693 (1981).

The Third Circuit, in affirming the district court's 23(b)(3) certification of a class of asbestos victims, signalled a marked receptivity to the use of class action devices in mass tort litigation:

[T]here is a growing acceptance of the notion that some mass accident situations may be good candidates for class action treatment. An airplane crash, for instance, would present the same liability questions for each passenger, although the damages would depend on individual circumstances. Determination of the liability issues in one suit may represent a substantial savings in time and resources. Even if the action thereafter "degenerates" into a series of individual damage suits, the result nevertheless works an improvement over the situation in which the same separate suits require adjudication on liability using the same evidence over and over again.... If economies can be achieved by use of the class device, then its application must be given serious and sympathetic consideration.... In short, the trend has been for courts to be more receptive to use of the class action in mass tort litigation.

*In re School Asbestos Litigation*, 789 F.2d 996, 1008–09 (3d Cir.1986). Indeed, courts throughout the nation have certified classes of plaintiffs in a variety of mass tort litigation. *See, e.g., Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472–73 (5th Cir.1986) (personal injury class of asbestos exposure victims certified); *In re Diamond Shamrock Chemicals Co.*, 725 F.2d 858, 860–61 (2d Cir.), *cert. denied*, 465 U.S. 1067, 104 S.Ct. 1417, 79 L.Ed.2d 743 (1984) (class of agent orange exposure victims certified); *McQuilken v. A & R Development Corp.*, 576 F.Supp. 1023, 1028–1032 (E.D.Pa.1983) (class of landowners harmed by construction activity certified); *In re Federal Skywalk Cases*, 93 F.R.D. 415, 420–25 (W.D.Mo.) (class of victims of hotel accident certified), *vacated*, 680 F.2d 1175, 1182 (8th Cir.1982) (reversal on limited ground that certified class action violated Anti–Injunction Act); *In re Three Mile Island Litigation*, 87 F.R.D. 433, 438–40 (M.D.Pa.1980) (class of residents suffering economic harm from nuclear accident certified); *Ouellette v. International Paper Co.*, 86 F.R.D. 476, 479–84 (D.Vt.1980) (class of landowners threatended by water pollution certified); *Payton v. Abbot Labs*, 83 F.R.D. 382, 387–92 (D.Mass.1979) (class of DES patients certified), *vacated* 100 F.R.D. 336 (D.Mass.1983); *Pruitt v. Allied Chemical Corp.*, 85 F.R.D. 100, 113 (E.D. Va.1980) (class of seafood industry representatives damaged by pollution certified); *Coburn v. 4–R Corporation*, 77 F.R.D. 43, 45–46 (E.D.Ky.1977) (class of representatives of patrons killed in nightclub fire certified); *Bentkowski v. Marfuerza Compania Maritima, S.A.*, 70 F.R.D. 401, 404–06 (E.D.Pa.1976) (class of injured cruise passengers certified); *Hernandez v. The*

*Motor Vessel Skyward,* 61 F.R.D. 558, 560–62 (S.D.Fla.1973) (class of injured cruise passengers certified); *Petition of Gabel,* 350 F.Supp. 624, 630–31 (C.D.Cal.1972) (class of representatives of passengers killed in air crash certified); *American Trading and Production Corp. v. Fishbach & Moore, Inc.,* 47 F.R.D. 155, 156–58 (N.D.Ill.1969) (class of fire victims certified); *Biechele v. Norfolk & Western Railway,* 309 F.Supp. 354, 355 (N.D. Ohio 1969) (class of residents impacted by coal dust pollution certified). Moreover, in cases where class certification was denied, courts have acknowledged that, under certain factual circumstances, class certification in mass tort litigation would be appropriate. *See, e.g., Causey v. Pan American World Airways, Inc.,* 66 F.R.D. 392, 397–98 (E.D. Va.1975); *Hobbs v. Northeast Airlines, Inc.,* 50 F.R.D. 76, 80 (E.D.Pa.1970).

## II.

■ The first requirement of Rule 23(a) is that the class be so numerous that joinder of each individual member of the class would be impracticable. As Professors Wright, Miller and Kane have stated:

> "[I]mpracticable" does not mean "impossible". The representatives of the proposed class need only show that it is extremely difficult or inconvenient to join all members of the class.

C. Wright, A. Miller, & M. Kane, 7A Federal Practice and Procedure, Section 1762, at 159 (1986). In the present action, there are alleged to be a minimum of forty to fifty passengers injured as a result of the derailment of The Night Owl. Courts have consistently found that the numerosity requirement is satisfied by classes similar to or smaller in size than the class for which certification is herein sought. *See, e.g., Basile v. Merrill Lynch, Pierce, Fenner and Smith,* 105 F.R.D. 506, 508 (S.D.Ohio 1985); *Zeffiro v. First Pennsylvania Banking and Trust Co.,* 96 F.R.D. 567, 569 (E.D.Pa.1983); *Manning v. Princeton Consumer Discount Co.,* 390 F.Supp. 320 (E.D.Pa.1975); *Philadelphia Elec. Co. v. Anaconda Am. Brass Co.,* 43 F.R.D. 452 (E.D.Pa.1968).

Rule 23(a)(2) requires that there be issues of law or fact common to the class as a whole. This requirement is satisfied if the plaintiff can show the existence of a "'common nucleus of operative facts,'" *Cohen v. Uniroyal, Inc.,* 77 F.R.D. 685, 690 (E.D.Pa.1977) *quoting Entin v. Barg,* 60 F.R.D. 108, 113 (E.D.Pa.1973), or if plaintiff can show the existence of common questions of law. *Gavron v. Blinder Robinson & Co.,* 115 F.R.D. 318, 322 (E.D.Pa. 1987). In this case, all claims by members of the potential class derive from the same nucleus of operative facts, to wit, the January 29th derailment of The Night Owl. Thus, as is the case with most mass tort actions, *see In re Agent Orange Product Liability Litigation,* 100 F.R.D. 718 (E.D. N.Y.1983), *affirmed,* 818 F.2d 145 (2d Cir. 1987), this Court finds that there are issues of law and fact common to the class as a whole.

■ Rule 23(a)(3) requires that the claims of the representative party be sufficiently typical of those of the members of the class as to assure that the absent class members will be adequately represented. *Eisenberg v. Gagnon,* 766 F.2d 770, 786 (3d Cir.1985). It is important to note, however, that the typicality requirement does not mean that all elements of the representative plaintiff's claim must be identical with those of the class members. *Id.* at 786; *Sharp v. Cooper & Lybrand,* 70 F.R.D. 544, 548–49 (E.D.Pa.1976); *see also* 3B Moore's Federal Practice Par. 23.06–2 at 197 (1985). Rather, as stated by the Third Circuit in *Weiss v. York Hospital,* 745 F.2d 786, 809 n. 36 (3d Cir.1984), *cert. denied,* 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985), typicality merely entails an inquiry whether "the named plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other members will be based." Thus, "a plaintiff's claim is typical if it arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *In re School Asbestos Litigation,* 104 F.R.D. 422, 430 (E.D.Pa.

1984), *affirmed in relevant part,* 789 F.2d 996, 1009 (3d Cir.1986).

■ In this case, plaintiff's claims arise from her being a passenger on defendant's train when it collided with defendant's maintenance vehicle. Inasmuch as all potential class members were on the same train and endured the same collision and derailment, their claims clearly arise from the same course of conduct. Moreover, each of the passengers will base their claims against the defendant on the same theories of liability. Similarly, defendant Amtrak will mount the same defenses against each of the members of the class. Indeed, as Professors Wright, Miller and Kane have stated, "[t]he argument for class action treatment is particularly strong in cases arising out of mass disasters such as an airplane crash in which their is little chance of individual defenses being presented." C. Wright, A. Miller & M. Kane, 7B Federal Practice and Procedure, Section 1783, at 75 (1986). Of course, it is clear that the named plaintiff's injuries and damages differs from that of the other members of the class. However, as discussed hereafter, the difference in the degree of harm suffered by plaintiff does not make her claim not typical "such that the interests of the class are placed in significant jeopardy." *Sley v. Jamaica Water and Utilities, Inc.,* 77 F.R.D. 391, 395 (E.D. Pa.1977).

Finally, Rule 23(a)(4) requires that the representative party fairly and adequately protect the interests of the class. The Third Circuit, in *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 247 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975) summarized the adequate representation standard:

> Adequate representation depends on two factors: (a) the plaintiffs' attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class.

The burden is on the defendant to demonstrate that the representation will be inadequate. *Lewis v. Curtis,* 671 F.2d 779, 788 (3d Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982). Defendant has not challenged the qualifications or capacity of plaintiff's counsel to conduct the proposed litigation, and this Court, based upon the affidavits submitted, finds that plaintiff's attorneys are experienced in this field of litigation and have demonstrated their ability to pursue this action vigorously. *See Santiago v. City of Philadelphia,* 72 F.R.D. 619, 625 (E.D.Pa.1976). Moreover, there is no evidence whatsoever that the representative plaintiff has interests antagonistic to the class she wishes to represent. Accordingly, the plaintiff has met each of the requirements of Fed.R. Civ.P. 23(a).

## III.

■ Because plaintiff seeks to maintain this class action pursuant to Fed.R.Civ.P. 23(b)(3), she must satisfy the two additional requirements imposed by that rule: predominance and superiority. *Wolgin v. Magic Marker Corp.,* 82 F.R.D. 168, 175 (E.D.Pa. 1979).

First, Rule 23(b)(3) requires a finding by the court that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." At a minimum, the Court's finding of predominance requires "the identification of the legal and factual issues, common and diverse, and an identification of the class members to which those relate." *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 756 (3d Cir.) (en banc), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974). However, the predominance inquiry, as Judge Aldisert has observed,

> is not simply a matter of numbering the questions in the case, labelling them as common or diverse, and then counting up. It involves a sophisticated and necessarily judgmental appraisal of the future course of the litigation as well as an evaluation of the most efficient means of proving the claims and the time that will be consumed by each aspect of the proof.

*Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 461–62 (3d Cir.1977) (Aldisert, Jr., dissent-

ing), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978).

As previously stated, in the present case each of the members of the class will base their liability claim on the same common nucleus of operative facts. Indeed, each class member will claim to have been injured, at the same time and location, as a result of the same conduct of the defendant in operating its rail system. Accordingly, each class member will offer precisely the same proof to establish defendant Amtrak's alleged liability towards and breach of duty to the passengers traveling on The Night Owl on January 29, 1988. Thus, the issue of liability in this case, as in most mass tort actions, is common to the entire class:

> [C]onsidering the widespread experience courts are gaining in the use of separate trials for the class issues of liability and individual issues of damages, a mass accident appears peculiarly appropriate for class treatment. Indeed, the question of liability to all those injured in a plane or train crash is more likely to be uniform than that of liability for manipulation of the price of securities ...

3B J. Moore, Federal Practice Par. 23.45–3, at 811 n. 35 (1974).

Moreover, the issue of causation in this case can similarly be established on a class wide basis. In the Third Circuit, the issue of causation focuses on the impact of defendant's conduct upon individual class members which may be proved on a class wide basis:

> Since, as we have indicated, the second aspect of fact of damage is simple concept of causation, any evidence which is logically probative of a loss attributable to the violation will advance the plaintiff's case ... Thus, when a ... violation impacts upon a class of persons ... there is no reason in doctrine why proof of the impact cannot be made on a common basis so long as the common proof adequately demonstrates some damage to each individual.

*Bogosian v. Gulf Oil Corp., supra,* 561 F.2d at 454. Inasmuch as this litigation involves injuries allegedly sustained by the passengers from a single cause: the collision and derailment of the train on which they were riding, the central issue involved in establishing causation is common to all class members.

As heretofore pointed out, there is no question that the injuries and damages suffered by the class members will have to be determined on an individual basis. However, "it has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate." *Bogosian v. Gulf Oil Corp., supra,* 561 F.2d at 456. *See also In re School Asbestos Litigation, supra,* 789 F.2d at 1010; *In re Sugar Industry Antitrust Litigation,* 73 F.R.D. 322, 351 (E.D. Pa.1976). *See generally* 5 Newberg on Class Actions Section 8824(b) at 879 (1977). This Court finds that the common issues of defendant's liability and defenses as well as causation predominate over the individual issues of injuries and damages.

Rule 23(b)(3) also requires that a class action be superior "to other available methods for the fair and efficient adjudication of the controversy." Such a comparative analysis must take into account several different interests:

> Superiority must be looked at from the point of view (1) of the judicial system, (2) of the potential class members, (3) of the present plaintiff, (4) of the attorney for the litigants, (5) of the public at large, and (6) of the defendant.

*Katz v. Carte Blanche Corporation, supra,* 496 F.2d at 760. This Court finds that, from the perspective of all interested parties as well as the judicial system itself, a class action is superior to any other available method for the fair and efficient adjudication of the pending controversy.

In a seminal article embracing the use of class actions, Judge Weinstein stated:

> [C]lass actions serve their intended function when they accomplish either of two purposes: when they prevent a multiplicity of suits or when they expedite the disposition of otherwise unredressable legally cognizable grievances.

Weinstein, Class Actions, 58 F.R.D. 299, 300 (1973). Certification of the proposed class in this case will accomplish both purposes. Indeed, in the absence of class certification, the judicial system would be confronted with the possibility of fifty or more lawsuits involving the same legal theories and facts. Absent class certification, the Court and the parties might face the possibility of litigating as many as fifty or more essentially identical cases involving similar evidence and lay and expert testimony. The resulting wasteful and inefficient use of scarce resources by both the parties and the Court compels utilization of the class action. *See In re School Asbestos Litigation, supra,* 789 F.2d at 996–97. Indeed, the philosophy behind Rule 23(b)(3) certification would clearly be served by certifying the proposed class:

> Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

Advisory Committee Note to 1966 Amendment to Fed.R.Civ.P. 23.

Moreover, this Court finds that certification of the proposed class will expedite the disposition of otherwise unredressable legally cognizable grievances. It is well recognized that 23(b)(3) certification is appropriate when "the economics of the situation make it impossible for the aggrieved members to vindicate their rights by separate actions." 7A C. Wright, A. Miller, and M. Kane, *Federal Practice and Procedure,* Section 1779, at 556 (1986). Indeed, without class certification, the alleged wrong may well go unchallenged:

> To permit the defendants to contest liability with each claimant in a single, separate suit, would, in many cases give defendants an advantage which would be almost equivalent to closing the door of justice to all small claimants. This is what we think the class suit practice was designed to prevent.

*Weeks v. Bareco Oil Company,* 125 F.2d 84, 90 (7th Cir.1941); *see also Roper v.*

*Consurve, Inc.,* 578 F.2d 1106, 1114 (5th Cir.1978). In the instant case, many of the passengers on The Night Owl undoubtedly suffered injuries insufficiently serious to justify full-scale independent litigation. Thus, in the absence of class certification, it is probable that many legally cognizable claims will go unprosecuted.

Because district courts bear the brunt of the ever increasing caseload in the federal judiciary, they must necessarily be granted broad discretion in the management of their dockets. *See Link v. Mercedes–Benz, Inc.,* 550 F.2d 860, 864 (3d Cir.1977); *In re School Asbestos Litigation, supra,* 789 F.2d at 1011.

For the reasons stated, this Court will grant plaintiff's motion and certify a class consisting of all passengers who suffered injuries as a result of the January 29, 1988 derailment of The Night Owl at or near Chester, Pennsylvania.

## ORDER

AND NOW, this 29th day of April, 1988, for the reasons set forth in this Court's Memorandum of April 29th, 1988,

IT IS ORDERED that the plaintiff's motion for class certification is GRANTED; and

IT IS FURTHER ORDERED that the following class is certified:

> All passengers traveling on the Amtrak Train No. 66 ("The Night Owl") on or about January 28–29, 1988, when it was involved in a collision and derailment at or near Chester, Pennsylvania, and who suffered injury as a result of such collision and derailment.

IT IS FURTHER ORDERED that within ten (10) days of the date of this Order, counsel shall submit an agreed form of order and notice to the class or, if agreement cannot be reached, shall submit their respective proposed forms of order and notice.