IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 18, 2006

Charles R. Fulbruge III
Clerk

_____

No. 05-30781

_____

STEERING COMMITTEE,

Plaintiff-Appellant,

v.

EXXON MOBIL CORPORATION,

Defendant-Appellee.

_____

On Appeal from the United States District Court
For the Middle District of Louisiana
3:94-MD-3

_____

Before DAVIS, BARKSDALE, and DeMOSS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Plaintiff-Appellants, members of a purported class alleging claims against Defendant-Appellee Exxon Mobil Corporation arising out of a fire in an Exxon Mobil facility, appeal the district court's order denying certification of a Rule 23(b)(3) plaintiff class in this mass tort action. A panel of this court granted Appellants' petition for permission to appeal and we have jurisdiction to hear this interlocutory appeal under 28 U.S.C. § 1292(e) and Rule 23(f). Finding no abuse of discretion by the district court, we affirm the denial of class certification.

1

I.

On August 8, 1994, a recently installed control valve in Exxon Mobil's Baton Rouge Chemical Plant failed, resulting in sponge oil leaks. The oil ignited, and although the fire was controlled quickly, it burned until its fuel source was exhausted, sometime on the morning of August 11, 1994. During the time the fire was burning, the wind carried the smoke plume to the southwest and across the Mississippi River. Exxon Mobil conducted air monitoring both inside and outside the facility, and in the surrounding community during the time of the fire.

Hundreds of suits were soon filed against Exxon Mobil, alleging various causes of action including personal injury, personal discomfort and annoyance, emotional distress resulting from knowledge of exposure to hazardous substances, fear of future unauthorized exposures, and economic harm including damage to business and property, among others.

After the suits were consolidated, Appellants proposed class certification under Rule 23(b)(3) for all issues and with the following class definition:

> All persons or entities residing or located, or owning property or operating businesses in East Baton Rouge Parish or West Baton Rouge Parish at the time of the incident at the Exxon Chemical Plan, Exxon Refinery, in Baton Rouge, Louisiana, on August 8, 1994, and who sustained legally cognizable damages, including but not limited to all claims for exemplary or punitive damages

2

> as provided for in LSA-C.C. art. 2314.3, property damage, business loss, and all personal injury claims, and who have not settled their claims in full, and who have complied with and comply with all further orders of the court in this class action.[1]

Appellants also proposed two class representatives.

Following a hearing but before the court ruled on class certification, the court granted summary judgment to Exxon Mobil on certain categories of claims. First, the court granted summary judgment to Exxon Mobil on all claims for physical injuries and non-intentional emotional distress brought by individual plaintiffs who were located outside the geographic area that the air modeling experts agreed was affected by the plume. Second, the court granted summary judgment to Exxon Mobil on all claims for intentional infliction of emotional distress.

Following the entry of its summary judgment, the court denied Appellants' motion for class certification, concluding that Appellants failed to satisfy the typicality and adequacy requirements of Rule 23(a), as well as the predominance and superiority requirements of Rule 23(b)(3). The Appellants were granted permission to appeal the denial of class certification pursuant to Rule 23(f), and this appeal followed.

---

[1] Plaintiff-Appellants modified their proposed class definition at least twice during the lower court proceedings—once in amending their motion for class certification and again in a post-hearing brief.

3

II.

A.

We review the denial of class certification for abuse of discretion. See O'Sullivan v. Countrywide Home Loans, Inc., 319 F.3d 732, 738 (5th Cir. 2003). Because, however, a court by definition abuses its discretion when it applies an incorrect legal standard, we review such errors *de novo*. Id. Moreover, although the district court has substantial discretion, the "district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class." Castano v. American Tobacco Co., 84 F.3d 734, 740 (5th Cir. 1996). Additionally, a "party seeking certification bears the burden of proof." Id.

Rule 23(a) provides four prerequisites to a class action: (1) a class "so numerous that joinder of all members is impracticable"; (2) "questions of law or fact common to the class"; (3) named parties' claims or defenses "typical ... of the class"; and (4) representatives that "will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a); Amchem Products, Inc. v. Windsor, 521 U.S. 591, 606-07 & n. 8, 9, 11, 13 (1997). In addition to these prerequisites, a party seeking class certification under Rule 23(b)(3) must also demonstrate "both (1) that questions common to the class members predominate over questions affecting only individual members, and (2) that class

4

resolution is superior to alternative methods for adjudication of the controversy." <u>Bell Atlantic Corp. v. AT&T Corp.</u>, 339 F.3d 294, 301 (5th Cir. 2003). Whether common issues predominate and whether the class action is a superior method to resolve the controversy requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case. <u>Castano</u>, 84 F.3d at 744.

The district court in this case assumed for purposes of its order that the plaintiffs could satisfy the numerosity and commonality questions, but concluded that plaintiffs failed to satisfy the typicality, adequacy, predominance, or superiority requirements. We agree that plaintiffs failed to demonstrate either predominance or superiority, and because failure on those two requirements dooms class certification under Rule 23(b)(3), we decline to address the remaining requirements.

B.

The predominance inquiry requires that questions of law or fact common to the members of the class "predominate over any questions affecting only individual members." <u>Unger v. Amedisys Inc.</u> 401 F.3d 316, 320 (5th Cir. 2005) (quoting <u>Berger v. Compaq Computer Corp.</u>, 257 F.3d 475, 479-80 (5th Cir. 2001)). The cause of action as a whole must satisfy Rule 23(b)(3)'s predominance requirement. <u>Castano</u>, 84 F.3d at 745 n. 21. This requirement,

5

although similar to the commonality requirement of Rule 23(a), is "far more demanding" because it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Unger, 401 F.3d at 320 (quoting Amchem, 521 U.S. at 623-24).

Appellants argue that the district court erred in concluding that the proposed class definition failed to satisfy the predominance requirement. Appellants argue that because the alleged injuries all arise from the single incident at the Exxon Mobil plant, the issues relating to Exxon Mobil's liability predominate over individual issues of causation and damages. Appellee argues that the district court correctly concluded that the individualized medical causation, injury, and damages issues were the predominant issues in the case, and therefore that a class action was an inappropriate vehicle for resolution.

The district court heard from experts who opined that the primary issues left to be resolved would turn on location, exposure, dose, susceptibility to illness, nature of symptoms, type and cost of medical treatment, and subsequent impact of illnesses on individuals. Moreover, in addition to the personal injury claims, separate types of proof would be necessary for the property damage, devaluation, and business loss claims. The district court observed that each plaintiff's claims will be

highly individualized with respect to proximate causation, including individual issues of exposure, susceptibility to illness, and types of physical injuries. As a result, the district court found that "individual issues surrounding exposure, dose, health effects, and damages will dominate at the trial." The district court concluded that "one set of operative facts would not establish liability and that the end result would be a series of individual mini-trials which the predominance requirement is intended to prevent."

As Appellants argue, the necessity of calculating damages on an individual basis will not necessarily preclude class certification. See Bell, 339 F.3d at 306. However, where individual damages cannot be determined by reference to a mathematical or formulaic calculation, the damages issue may predominate over any common issues shared by the class. Id. at 308 (holding that "class certification is not appropriate" because plaintiffs "failed to demonstrate that the calculation of individualized actual economic damages, if any, suffered by the class members can be performed in accordance with the predominance requirement"); O'Sullivan, 319 F.3d at 745 (holding that district court abused its discretion in certifying class "[i]n light of the individual calculation of damages that is required"); Allison v. Citgo Petroleum Corp., 151 F.3d 402, 419 (5th Cir. 1998) (holding that certification under Rule 23(b)(3)

was not appropriate because "plaintiffs' claims for compensatory and punitive damages must therefore focus almost entirely on facts and issues specific to individuals rather than the class as a whole").

It is clear from the record that the damages claims in this case are not subject to any sort of formulaic calculation. Instead, each individual plaintiff suffered different alleged periods and magnitudes of exposure and suffered different alleged symptoms as a result. Some plaintiffs allege both personal and property injuries, while others allege only one or the other. Moreover, many plaintiffs allege as part of their claim for compensatory damages emotional and other intangible injuries. "The very nature of these damages, compensating plaintiffs for emotional and other intangible injuries, necessarily implicates the subjective differences of each plaintiff's circumstances; they are an individual, not class-wide, remedy. The amount of compensatory damages to which any individual class member might be entitled cannot be calculated by objective standards." Allison, 151 F.3d at 417 (footnote omitted).

Appellants rely principally on two cases in which mass tort classes were certified, Sala v. National Railroad Passenger Corp., 120 F.R.D. 494 (E.D. Pa. 1998) (train derailment), and Sterling v. Velsicol Chemical Corp., 855 F.2d 1188 (6th Cir.

1988) (water contamination). However, Appellants do no more than recite the disposition in each of those cases; little effort is made to relate the results in those cases to the facts of the case now before this court. Indeed, Appellants' citation of <u>Sala</u> and <u>Sterling</u> does little more than prove that it is theoretically possible to satisfy the predominance and superiority requirements of Rule 23(b)(3) in a mass tort or mass accident class action, a proposition this court has already accepted. <u>See, e.g.</u>, <u>Watson v. Shell Oil Co.</u>, 979 F.2d 1014, 1022-23 (5th Cir. 1992) (affirming class certification of claims arising from refinery explosion).

Importantly, the court in <u>Sala</u> determined that the claims in that case involved injuries sustained from a single cause: the collision and derailment of the train on which they were riding. Thus, causation could be adjudicated on a class-wide basis. In this case, although the alleged cause of the injuries is also a single accident—a refinery fire—the causal mechanism for plaintiff's injuries—alleged exposure or fear of exposure to toxic substances—is not so straightforward. While it is certainly true that the cause of the fire itself is an issue common to the class, each individual plaintiff must meet his or her own burden of medical causation, which in turn will depend on any number of the factors enumerated by the experts who testified at the class certification hearing.

Appellants argue, and Appellee appears to agree, that the issue of liability, i.e., Appellee's negligence or strict liability for improperly installing the valve and causing the fire, can be determined on a class-wide basis. Appellants' argument, however, does no more than prove that some common issues exist across the class. The predominance inquiry, however, is more rigorous than the commonality requirement. Unger, 401 F.3d at 320. Appellee argues that the cause of the fire and related liability issues are relatively straightforward, and Appellants do little to dispute that claim. Based on the evidence presented to the district court regarding the complexity of the medical causation and damages issues, and with little evidence that the liability issues are similarly complex, it was not an abuse of its discretion for the district court to conclude that Appellants had failed to demonstrate that the class issue of Appellee's negligence or strict liability predominates over the vastly more complex individual issues of medical causation and damages.

Notably, moreover, the class certified in Sterling was bifurcated, with class treatment limited to certain class-wide liability issues. See Sterling, 855 F.2d at 1197 ("However, individual members of the class still will be required to submit evidence concerning their particularized damage claims in subsequent proceedings."). Similarly, the court in Sala

10

acknowledged that individualized damages issues "will have to be determined on an individual basis." Sala, 120 F.R.D. at 499. This court has likewise approved mass tort or mass accident class actions when the district court was able to rely on a manageable trial plan—including bifurcation and/or subclasses—proposed by counsel. See, e.g., Watson, 979 F.2d at 1017-18 & n. 9, 1024.

Although Appellants' counsel during oral argument to this court briefly suggested subclasses or bifurcation as a remedy for the obstacles preventing a finding of predominance in this case, the record does not reflect that counsel made such a proposal to the district court. Certainly, when the parties moving for class certification have full opportunity to present to the district court proposals for their preferred form of class treatment, the district court is under no obligation to *sua sponte* consider other variations not proposed by any party. See United States Parole Commission v. Geraghty, 445 U.S. 388, 408 (1980)("[I]t is not the District Court that is to bear the burden of constructing subclasses. That burden is upon the [party proposing certification] and it is he who is required to submit proposals to the court. The court has no *sua sponte* obligation so to act."). We need not now consider whether bifurcation or subclasses would remedy Appellants' difficulties in this case, because Appellants' counsel never proposed either. We agree with the district court that Appellants have not met their burden of

11

demonstrating that common issues predominate over the significant individual issues in the case, including medical causation, injury, and damages.

## C.

Appellants also argue that the district court erred in concluding that the proposed class action did not provide a superior vehicle for resolving the suits. The district court concluded that because of the predominance of individual causation and damage issues, it would not be efficient to certify a class. The district court also noted that the case has already been streamlined using other case management tools, including narrowing the claims and potential plaintiffs through summary judgment, and facilitating the disposition of the remaining plaintiffs' claims through issuance of a _Lone Pine_ order.[2]

Because all Rule 23 class-action requirements must be satisfied, and we hold the predominance factor is not, we need not address the superiority factor. However, we address this

---

[2] _Lone Pine_ orders, which derive their name from _Lore v. Lone Pine Corp._, No. L-33606-85, 1986 WL 637507, (N.J. Sup. Ct. Nov. 18, 1986), are pre-discovery orders designed to handle the complex issues and potential burdens on defendants and the court in mass tort litigation by requiring plaintiffs to produce some evidence to support a credible claim. See _Acuna v. Brown & Root Inc._, 200 F.3d 335, 340 (5th Cir. 2000) (discussing use of _Lone Pine_ orders in mass tort litigation). The _Lone Pine_ order issued in this case requires that individual plaintiffs each produce, depending on the type of injury alleged, either an affidavit from a qualified treating or other physician, or an affidavit from a qualified real estate appraiser or other real estate expert.

requirement to demonstrate the interrelationship between predominance and superiority. The Advisory Committee's notes to Rule 23(b)(3) comment on the impact of the predominance inquiry on superiority in mass tort cases:

> A "mass accident" resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses to liability, would be present, affecting the individuals in different ways. In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried.

FED. R. CIV. P. 23(b)(3) advisory committee's note (citation omitted); see also Castano, 84 F.3d at 745 n.19 (discussing advisory committee note and citing Georgine v. Amchem Products, Inc., 83 F.3d 610, 627-28 (3d Cir. 1996); In re American Medical Sys., 75 F.3d 1069, 1084-85 (6th Cir. 1996)). Appellants have not demonstrated that this mass tort has any exceptional features that warrant departing from the general rule and treating it as a class action.

As this court has noted, the predominance of individual issues relating to the plaintiffs' claims for compensatory and punitive damages detracts from the superiority of the class action device in resolving these claims. See Allison, 151 F.3d at 419; Castano, 84 F.3d at 745. Particularly in this case, where the district court has been careful to manage the litigation efficiently through the judicious use of consolidated summary

13

judgments and other tools such as <u>Lone Pine</u> orders, we will not second-guess the district court's discretionary judgment that a class action would not provide a superior method of adjudication.

## V.

Because we agree that Appellants failed to demonstrate that their proposed class satisfied either the predominance or superiority requirements of Rule 23(b)(3), we affirm the district court's denial of class certification.

AFFIRMED.